IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MELVIN BERNARD THOMPSON,

     Petitioner,

v.                         CASE NO. 4:15-cv-254-MW-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

     This case is before the Court on ECF No. 1, Petitioner's *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Leon County conviction for sexual battery with a deadly weapon, burglary of a dwelling while armed with a deadly weapon, aggravated assault with a deadly weapon, and false imprisonment. Petitioner presents three grounds for relief challenging the trial court's finding of an escalating pattern of criminal conduct as a basis for upward departure from the sentencing guidelines. (ECF No. 1.) Respondent filed a response and appendix with relevant portions of the state-court record, arguing that the Petition should be denied because

Petitioner's claims lack of merit. (ECF No. 16.) Petitioner thereafter filed a reply. (ECF No. 41.) Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

## I. <u>State-Court Proceedings</u>

Petitioner was charged by Information on September 19, 2005, with having committed the following offenses on August 30, 1995: (1) Sexual battery with a deadly weapon, in violation of Fla. Stat. § 794.011(3) (1995); (2) Burglary of a dwelling while armed, in violation of Fla. Stat. § 810.02(2)(b) (1995); (3) Aggravated assault with a deadly weapon, in violation of Fla. Stat. § 784.021(1)(a) (1995); and (4) False imprisonment, in violation of Fla. Stat. § 787.02(2) (1995). (ECF No. 16-1 at 14–15.)

On February 23, 1996, defense counsel filed a motion to withdraw as counsel based on Petitioner's threats of physical harm to counsel and counsel's family if Petitioner was convicted. (*Id.* at 17–18, 23–24.) At a hearing, after reviewing Petitioner's charges and the maximum penalties, the trial judge denied the motion to withdraw, stating,

[i]f there has been a threat made, the Court concludes that it

---

[1] An evidentiary hearing is not warranted in this case because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

> was a threat that could never be carried out. If he's convicted,
> which was the condition of his threat, if he's convicted, he will
> be in prison for the rest of his life and he couldn't do physical
> harm to you or . . . anyone else.

(*Id.* at 31–32.)

Thereafter, defense counsel filed a motion to disqualify the trial judge

based on the judge's comments indicating his intention to sentence

Petitioner to life in prison upon conviction. (*Id.* at 38–40.) The motion to

disqualify, however, was denied as untimely and therefore facially

insufficient. (*Id.* at 44–55.)

Eventually, on May 30, 1997, following a jury trial,[2] Petitioner was

convicted on all four counts as charged. (ECF No. 16-2 at 305–08.)

Petitioner faced a statutory maximum of life imprisonment for his conviction

for sexual battery with a deadly weapon. (*Id.* at 339.)

At sentencing proceedings on September 17, 1997, the trial court

found that aggravating circumstances justified an upward departure from

the sentencing guideline range of 122.5 months to 204.2 months

imprisonment. (*Id.* at 314, 333.) The trial court therefore sentenced

Petitioner to life imprisonment on Count 1 (sexual battery with a deadly

weapon), five years' imprisonment on Count 3 (aggravated assault with a

---

[2] Petitioner was represented at trial by substitute counsel. (ECF No. 16-1 at 68–69.)

deadly weapon) to run concurrent with Count 1, five years' imprisonment on Count 4 (false imprisonment) to run concurrent with Count 1, and life probation on Count 2 (burglary of a dwelling while armed), to run consecutive to the term of imprisonment. (*Id.* at 339–55.)

On September 23, 1997, the trial court issued written reasons for the upward departure sentence. (*Id.* at 357.) The court found based on Petitioner's prior criminal record that his "behavior establishes an escalating pattern of criminal conduct in that he has gone from committing misdemeanor crimes to felony crimes and property crimes to violent crimes. Based on the defendant's conduct, the Court finds that he is not amenable to rehabilitation or supervision." (*Id.*) The court also found that,

> the victim was treated with particular cruelty and that she suffered extraordinary emotional trauma as a result of these especially heinous, atrocious and cruel crimes. As evidenced by the record, the Court finds that the victim was totally free from any fault and that she was indeed a person who had never previously engaged in any type of sexual activity. The Court also finds that the victim did nothing to encourage the defendant into committing these acts of violence against her and that the victim was put in great fear of her own life in that she was made to believe that her roommate had already been killed.

(*Id.*)

Petitioner appealed his conviction and sentence to the First District

Court of Appeal ("First DCA"), arguing, in part, that trial counsel was ineffective for failing to timely file the motion to disqualify the trial judge. (*Id.* at 359–97; ECF No. 16-3 at 1–18.) On March 31, 2000, the First DCA affirmed with written opinion. (ECF No. 16-3 at 116–19.) The First DCA, however, refrained from addressing Petitioner's claim of ineffective assistance of counsel, as the issue would be best addressed in a postconviction proceeding. (*Id.*) After denying Petitioner's motion for rehearing, the mandate followed on June 15, 2000. (*Id.* at 120–22.)

Accordingly, Petitioner filed a *pro se* motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 on May 28, 2002. (*Id.* at 218–309.) He then obtained counsel and filed an amended motion for postconviction relief on July 30, 2004. (*Id.* at 311–27; ECF No. 16-4 at 1–60.) In the motion Petitioner argued, among other claims, that trial counsel was ineffective for failing to timely file a motion to disqualify the trial judge. Following an evidentiary hearing and supplemental briefing, the trial court denied Petitioner's amended motion on December 9, 2005. (ECF No. 16-4 at 148–77.) Petitioner appealed to the First DCA. (ECF No. 16-5 at 3–51.) The First DCA affirmed with written opinion on March 2, 2007. (*Id.* at 53–74.) With respect to Petitioner's ineffective assistance of counsel claim for failing to timely disqualify the trial judge, the First DCA held that an

appellant must show actual prejudice, or that the outcome of the case would have been different in order to prevail on a postconviction claim of ineffective assistance of counsel for failure to timely file a motion to recuse. (*Id.*)

Petitioner then filed a notice to invoke discretionary jurisdiction of the Florida Supreme Court pursuant to Fla. R. App. P. 9.030, which the Florida Supreme Court accepted on July 9, 2007. (*Id.* at 76–91; ECF No. 16-6 at 64.)[3] The Florida Supreme Court then held oral arguments on February 8, 2008. (ECF No. 16-5 at 107, 193.)

On August 28, 2008, the Florida Supreme Court held that the proper standard for determining prejudice with regard to an ineffective assistance of counsel claim based on counsel's failure to disqualify the presiding judge was that set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.* at 195–217.) Specifically, the prejudice component is not an outcome-determinative test and there is no requirement to show that counsel's deficiency actually altered the outcome of the case; instead, the movant

---

[3] In the meantime, Petitioner filed a petition under § 2254 in this Court on September 19, 2007, followed by an amended petition on January 16, 2008. (ECF No. 16-6 at 238–90; ECF No. 16-7 at 1–29, 31–55.) But because the Florida Supreme Court had accepted jurisdiction of Petitioner's case, Respondent filed a motion to dismiss the § 2254 petition as unexhausted. (*Id.* at 57–60.) Accordingly, this Court stayed the § 2254 petition pending a decision by the Florida Supreme Court. (*Id.* at 80–81.)

must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Id.*) The Florida Supreme Court therefore quashed the First DCA's decision and remanded for a new sentencing proceeding. (*Id.*) Accordingly, on October 22, 2008, the First DCA reversed the circuit court's denial of Petitioner's claim of ineffective assistance of counsel and remanded for a new sentencing proceeding. (*Id.* at 219–20.) The mandate followed on November 7, 2008. (*Id.* at 221.)[4]

Resentencing proceedings commenced on October 12, 2011. (*Id.* at 294–395; ECF No. 16-6 at 1–3.) Petitioner faced a maximum sentence under the guidelines of 204.2 months' imprisonment. (ECF No. 16-5 at 390.) Based on Petitioner's prior convictions and the instant conviction, however, the resentencing court found an escalating pattern of criminal conduct and therefore imposed an upward departure sentence of life imprisonment for count one (sexual battery with a deadly weapon) and count two (burglary of a dwelling while armed with a deadly weapon) and five years imprisonment for count three (aggravated assault with a deadly

---

[4] In light of the Florida Supreme Court's order remanding Petitioner's case for resentencing—which would likely moot several of Petitioner's habeas claims or give rise to different claims—this Court dismissed Petitioner's § 2254 petition without prejudice on December 3, 2008. (ECF No. 16-7 at 97–104.)

weapon) and count four (false imprisonment), with all sentences to be served concurrently. (ECF No. 16-5 at 395; ECF No. 16-6 at 1, 5–6, 8.) In a separate written order, the trial court explained that the upward departure was based on the finding of an escalating pattern of criminal conduct. (ECF No. 16-6 at 5–6.)

Petitioner appealed the resentencing to the First DCA. (*Id.* at 20.) On appeal, Petitioner argued that the trial court violated his Sixth Amendment right to a jury finding of any fact justifying a sentence greater than that authorized by the sentencing guidelines. (*Id.* at 22–41.) The First DCA per curiam affirmed on December 10, 2012, citing to *Ross v. State*, 88 So. 3d 297 (Fla. 1st DCA 2012). (*Id.* at 91.) The mandate followed on December 27, 2012. (*Id.* at 92.)

Petitioner thereafter filed a petition for writ of certiorari in the United States Supreme Court. (*Id.* at 94–116.) The Supreme Court denied certiorari on October 7, 2013. (*Id.* at 166.)

On September 25, 2014, Petitioner filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). (ECF No. 16-7 at 106–25.) Petitioner argued that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), because it was enhanced based on facts that were not submitted to the

jury and proved beyond a reasonable doubt. (*Id.*) Petitioner also argued

that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and *James*

*v. United States*, 550 U.S. 192 (2007), which the trial court relied on for

enhancing Petitioner's sentence based on recidivism, had been wrongly

decided. (*Id.*)

On November 5, 2014, the postconviction court summarily denied the

motion citing to *Ross*, 88 So. 3d at 297. (*Id.* at 151–52.) Petitioner

thereafter appealed to the First DCA (*Id.* at 167–84.) The First DCA per

curiam affirmed without written opinion on February 12, 2015, and the

mandate followed on March 10, 2015. (*Id.* at 190–91.)

In the meantime, on November 25, 2014, Petitioner filed a second

motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). (*Id.*

at 193–221.) The trial court, however, dismissed the second motion to

correct illegal sentence on December 9, 2014, for lack of jurisdiction

because his first motion—which raised nearly identical issues—was

pending before the First DCA. (ECF No. 16-8 at 30.) Although Petitioner

filed a notice of appeal, he thereafter filed a notice voluntarily dismissing

his appeal on December 17, 2014. (*Id.* at 32–34.) Accordingly, the First

DCA dismissed the appeal on December 29, 2014. (*Id.* at 36.)

Petitioner then filed a notice to the First DCA, which the First DCA

construed as a motion to reinstate the appeal, which was granted on February 16, 2015. (*Id.* at 38–42.)[5] Petitioner then filed a *pro se* initial appellate brief in the First DCA. (*Id.* at 49–78.) On April 28, 2015, the First DCA per curiam affirmed without written opinion, and the mandate followed on May 27, 2015. (*Id.* at 83–84.)

Petitioner proceeded to file a *pro se* petition for writ of certiorari in the United States Supreme Court on May 5, 2015. (*Id.* at 87–126.) The Supreme Court denied certiorari on June 29, 2015. (*Id.* at 128.)

Petitioner then filed the instant petition in this Court on May 4, 2015. (ECF No. 1.)

## II.  Scope of Federal Habeas Review

The role of a federal habeas court when reviewing a state prisoner's application pursuant to § 2254 is limited*. Williams v. Taylor*, 529 U.S. 362, 403–04 (2000). Under § 2254(a), federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

---

[5] Petitioner also filed another *pro se* motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a) on February 19, 2015. (ECF No. 16-8 at 130–58.) In light of the pending appeal in the First DCA, the trial court dismissed the motion on March 6, 2015. (*Id.* at 213–14.)

States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* § 2254(d)(1). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054–55 (11th Cir. 1983).

Moreover, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120–21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir. 1990). The limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is "couched" in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

## III.  DISCUSSION

### A.  *Ground One*

In ground one Petitioner contends he was denied his rights under the Sixth and Fourteenth Amendments because the trial court sentenced him to two life sentences based on Fla. Stat. 921.001(8) (1995). This statute authorizes an upward departure from the sentencing guidelines "based on credible facts, proven by a preponderance of the evidence, which demonstrate that the defendant's prior record . . . indicate an escalating pattern of criminal conduct." Petitioner says this standard of proof violates *Apprendi* and *Blakely*.

Petitioner presented this claim to the state court in his September 25, 2014 motion to correct illegal sentence. (ECF No. 16-7 at 106–25.) The trial court summarily denied the motion. The trial court stated:

> Defendant contends that his sentence is illegal because the sentencing court's finding of an escalating pattern of criminal conduct was required to be submitted to a jury in accordance with *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Defendant's legal analysis is foreclosed by *Ross v. State*, 88 So. 3d 297 (Fla. 1st DCA 2012). "Because the trial court based its finding of an escalating pattern of criminal behavior on the fact of the prior conviction . . . pertaining to both the previous conviction and the convictions in this case, the upward departure sentence on appeal comported with *Blakely v. Washington* and Appellant's 6th Amendment rights." *Id.* at 299. Defendant's secondary argument regarding the standard of proof required is likewise

without merit, because the Court found the departure point beyond a reasonable doubt. *Ex. 2.* Defendant's sentence is not illegal.

(ECF No. 16-7 at 151–52.) Exhibit 2, which the trial court cited in its order

summarily denying the motion, was the trial court's written reasons for

upward departure. In its entirety the trial court wrote:

> The Court finds that consistent with *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), it has the legal authority to find a departure point from the 1994 sentencing guidelines for an escalating pattern of criminal conduct. A finding of an escalating pattern of criminal conduct, as articulated in *Barfield v. State*, 594 So. 2d 259, 261 (Fla. 1992), requires only analysis of the statutory elements of the crimes committed. This type of elemental analysis does not run afoul of *Apprendi* and *Blakely*. *James v. United States*, 550 U.S. 192, 214 (2007).
>
> In accordance with Florida Statutes section 921.001(8), and the above-cited legal authority, *the Court finds beyond a reasonable doubt that Defendant evidenced an escalating pattern of criminal conduct, which justifies an upward departure from the sentencing guidelines.* Prior to 1995, Defendant had a record of committing crimes, including Obstructing an Office in 1991 and Grand Theft of a Motor Vehicle in 1993. In 1995 alone, Defendant committed twelve counts of Passing Worthless Bank Check, followed by Grand Theft of a Motor Vehicle, followed by the current offenses of Sexual Battery with a Deadly Weapon, Burglary of a Dwelling While Armed, Aggravated Assault with a Deadly Weapon, and False Imprisonment. Defendant went from committing mostly misdemeanors and property crimes to committing violent felonies. Based on Defendant's criminal conduct, the Court finds that there is a reasonable justification for an upward departure from the sentencing guidelines.

(ECF No. 16-7 at 164–65) (emphasis added). Although Petitioner

appealed, arguing that the trial court failed to address his contention that the statute itself is unconstitutional, the First DCA *per curiam* affirmed without written opinion. (*Id.* at 190.) The state courts therefore adjudicated Petitioner's claim on the merits and that judgment is entitled to deference under the AEDPA.

Petitioner has failed to demonstrate that the state court's adjudication was contrary to, or involved an unreasonable application of clearly established Federal law. Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted). Nonetheless, the Supreme Court continues to recognize that recidivism is a traditional basis for a sentencing court to increase an offender's sentence without having submitted the defendant's prior conviction(s) to the jury and proved beyond a reasonable doubt. *See Almendarez-Torres*, 523 U.S. at 226–27 (defendant's prior conviction is merely a sentencing factor that does not have to be submitted to the jury

and proved beyond a reasonable doubt); *Apprendi*, 530 U.S. at 488–90

(declining to revisit *Almendarez-Torres*).

Petitioner's sentence was enhanced based on a finding of recidivism.

Florida law permits an trial judge to impose an upward departure based

upon a finding a recidivism without having to submit that fact to a jury. *See*

Rule 3.701(b)(6) Fla. Sentencing Guidelines ("While the sentencing

guidelines are designed to aid the judge in the sentencing decision and are

not intended to usurp judicial discretion, departures from the presumptive

sentences established in the guidelines shall be articulated in writing and

made when circumstances or factors reasonably justify the aggravation or

mitigation of the sentence. The level of proof necessary to establish facts

supporting a departure from a sentence under the guidelines is a

preponderance of the evidence."). This violates neither *Apprendi* nor

*Blakely*. *See United States v. Michel*, 430 F. App'x 838, 839 (11th Cir.

2011) (per curiam), *cert. denied*, 565 U.S. 956 (2011) (rejecting petitioner's

argument that *Almendarez-Torres* permits a sentencing court to find only

there mere fact of a conviction and that *Apprendi* and other cases bar

judge-made findings about the factual nature of the prior convictions);

*Moline v. Sec'y, Fla. Dep't of Corr.*, No. 3:09-cv-687-J-34JBT, 2012 WL

4369657, at *13 (M.D. Fla. Sept. 25, 2012) (*Almendarez-Torres* foreclosed

petitioner's Sixth Amendment claim that the trial court erred in imposing an upward departure from the sentencing guidelines based on his prior convictions for which there was record evidence).[6]

Even assuming there was an *Apprendi/Blakely* error—which there was not—Petitioner has failed to demonstrate that the error was not harmless. *See Washington v. Recuenco*, 548 U.S. 212, 222 (2006) (*Blakely* error from failing to submit a sentencing factor to the jury is not a structural error that will always invalidate the conviction); *United States v. Nealy*, 232 F.3d 825, 829 (11th Cir. 2000) (an *Apprendi* error is subject to a harmless error analysis). In the context of federal habeas review, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the

---

[6] Petitioner argues in his reply that when the resentencing judge orally pronounced Petitioner's sentence the judge erred by enhancing his sentence based upon (an escalating pattern of criminal behavior) because he did so based upon " a preponderance of the evidence" standard. As discussed *infra*, the finding that Defendant's criminal history evidences an escalating pattern of criminal behavior is a finding that does not need to be submitted to a jury and proved beyond a reasonable doubt.

Furthermore, although Petitioner argues in his reply that the resentencing judge improperly used Fla. Stat. 921.0016(3)(p) to enhance Petitioner's sentence, Petitioner is simply wrong. Section 921.0016(3)(p) (1995) permitted a court to depart from the sentencing guidelines where the defendant was not amenable to rehabilitation or supervision, as evidenced by an escalating pattern of criminal conduct. This is not the same as a finding that the defendant's prior record and the current offense indicate an escalating pattern of criminal conduct. Although there was discussion on the record at resentencing about whether Petitioner was amenable to rehabilitation, the resentencing judge's departure sentence was clearly based on an escalating pattern of criminal conduct, not Petitioner's amenability to rehabilitation or supervision.

jury's verdict." *Mansfield v. Sec'y, Dep't of Corr.*, No. 09-12312, 2012 WL 1605655, at *5 (11th Cir. May 9, 2012) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "In assessing the prejudicial impact of the federal constitutional error in a state court criminal sentencing proceeding under the 'substantial and injurious effect' standard, there must be 'more than a reasonable probability that the error contributed to the sentence.'" *Moline,* 2012 WL 4369657, at *13 (quoting *Horsley v. Alabama*, 45 F.3d 1486, 1493 (11th Cir. 1995), *cert. denied*, 516 U.S. 960 (1995); *Mason v. Allen*, 605 F.3d 1114, 1123 (11th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011)).

At Petitioner's resentencing the state entered evidence of Petitioner's prior convictions, which included passing worthless checks—a misdemeanor—on at least seven occasions between 1991 and 1995. (ECF No. 16-5 at 335–42.) He was also convicted of obstructing an officer—a misdemeanor—in violation of probation in 1991. (*Id.*) Then in 1993, Petitioner was convicted of grand theft of a motor vehicle—a third degree felony—in violation of probation. (*Id.*) He was again convicted of grand theft of a motor vehicle in 1995. (*Id.*) Then, later in 1995 Petitioner committed the instant crimes. Thus, Petitioner went from writing bad checks and stealing cars to committing sexually violent offenses and offenses with firearms and assault. Based on this evidence, a reasonable jury would

...

likely conclude that Petitioner, who went from committing property-type crimes to crimes of violence toward a person, demonstrated an escalating pattern of criminal behavior. *See* § 921.001(8) ("The escalating pattern of criminal conduct may be evidenced by a progression from nonviolent to violent crimes, a progression of increasingly violent crimes, or a pattern of increasingly serious criminal activity.") Accordingly, even if there was an *Apprendi/Blakely* error, Petitioner has failed to demonstrate that the error was anything more than harmless. Ground one is therefore due to be denied.

## B.  Ground Two

In ground two Petitioner argues the trial court improperly engaged in judicial fact-finding when it imposed a departure sentence outside the legally prescribed statutory maximum sentence. Petitioner says this violated his rights under the Sixth and Fourteenth Amendment. He further argues that "the entire body of Florida's laws used authorizing said judicial fact finding to impose illegal sentences are unconstitutional due to subsequent development of Sixth and Fourteenth Amendment Jurisprudence [which] has eroded their underpinnings." (ECF No. 1 at 13.)

To the extent Petitioner claims the trial court erroneously engaged in judicial fact-finding when imposing a departure sentence—and thereby

violating Petitioner's Sixth and Fourteenth Amendment rights— Petitioner's claim is essentially the same as his claim in ground one. For the reasons previously discussed, that claim is due to be denied.

Furthermore, to the extent Petitioner claims that all of Florida's laws authorizing judicial fact-finding are unconstitutional, Petitioner fails to elaborate on which laws he challenges (other than those applicable to his case and previously discussed) and how those laws violated his constitutional rights. Vague speculative assertions about the constitutionality of laws that had no bearing on Petitioner's conviction or sentence are not proper federal habeas claims. And even if they were, Petitioner nonetheless failed to properly exhaust this issue. Ground two should therefore be denied.

## C. Ground Three

Finally, in ground three Petitioner argues that evidence of an escalating pattern of criminal activity and evidence that a person is not amenable to rehabilitation or supervision because of an escalating pattern of criminal activity, are elements of a separate crime because they alter the maximum punishment. Thus, Petitioner says these elements should have been charged in the information, submitted to a jury, and found by the jury based upon a "beyond a reasonable doubt" standard. He further argues

that this is different from the doctrine of recidivism. Nonetheless, Petitioner also contends that *Almendarez-Torres* was wrongly decided and has been eroded by the *Apprendi* line of cases.

As an initial matter, ground three does not present an actual claim for federal habeas relief based on a constitutional violation. Nonetheless, to the extent Petitioner argues that the elements justifying an enhanced sentence should have been charged in the indictment and submitted to the jury, this argument mirrors those raised in grounds one and two. The Court, therefore, need not revisit this issue.

Furthermore, to the extent Petitioner's *Almendarez-Torres* argument is liberally construed to present a federal claim, his claim fails.

For starters, contrary to Respondent's contention, Petitioner properly exhausted this issue in state court. Specifically, Petitioner presented this issue to the trial court in ground two of his September 25, 2014 motion to correct illegal sentence (ECF No. 16-7 at 113–16.) Although the trial court did not specifically address *Almendarez-Torre*s in its order, the trial court nonetheless summarily denied the motion on the merits. (*Id.* at 151–52.) Petitioner appealed to the First DCA, in which he argued that the trial court failed to conclusively rule upon the merits of his *Almendarez-Torres* argument. (*Id.* at 181–82.) He also presented his argument that

*Almendarez-Torres* was wrongly decided and has since been eroded by the *Apprendi* line of cases. (*Id.*) The First DCA, however, per curiam affirmed the trial court's ruling without opinion. (*Id.* at 190.) The state court's decision is therefore entitled to deference.

Petitioner has failed to demonstrate that the state court's decision was an unreasonable application of or contrary to clearly established Federal law. While certainly the viability of *Almendarez-Torres* has been questioned, the Supreme court has not overruled *Almendarez-Torres*. *See Apprendi*, 530 U.S. at 489 (noting it is arguable that *Almendarez-Torres* was incorrectly decided, but declining to revisit the decision because petitioner did not contest the decision's validity). The Eleventh Circuit has explicitly stated, "unless and until the Supreme Court specifically overrules *Almendarez-Torres*, we will continue to follow it." *United States v. Greer*, 440 F.3d 1267, 1273 (11th Cir. 2006); *United States v. McCain*, 358 F. App'x 51, 52 (11th Cir. 2009). Petitioner even concedes in his reply that *Almendarez-Torres* remains good law. (ECF No. 41 at 23.) Surely then, the state court's decision was neither an unreasonable application of nor contrary to clearly established federal law. Ground three is therefore due to be denied.

## IV.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The undersigned therefore recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a writ of habeas corpus, ECF No. 1, should be **DENIED**, and

that a certificate of appealability should be **DENIED**.

**DONE AND ORDERED** this 7th day of November 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

 **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**